## WISHON-WATSON COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 38727. Promulgated January 22, 1932.

*A. Calder Mackay, Esq.*, for the petitioner.
*Philip M. Clark, Esq.*, for the respondent.

324

TRAMMELL: The only matter now in controversy is whether the respondent erred in disallowing the deduction taken by the petitioner as a loss sustained on the transaction in December, 1925, whereby it

transferred to two of its directors certain of its assets under the circumstances set out in our findings of fact. The petitioner contends that, having sold in 1925 for $6,000 assets which had cost it $59,959.28, it sustained a loss of $53,959.28, which it is entitled to deduct. The respondent contends that the deduction is not allowable and urges that the transaction was a mere " book write-off of assets," since the notes given therefor were never paid but were charged off by the petitioner and deducted as bad debts in its income-tax return for the following year.

In support of his contention the respondent points out that the petitioner was practically a one-family corporation; that A. Emory Wishon and R. W. Watson, to whom the assets were transferred, constituted a majority of the petitioner's directors, and that they could have established an apparent loss to the petitioner in any amount they chose by accepting as payment for the assets an amount necessary to produce the desired loss. He urges that the transaction in 1925 alone and apart from what later occurred was not the result of dealings at arm's length between the parties and was not such a transaction as would permit the petitioner to take a deductible loss in that year.

In *M. I. Stewart & Co.*, 2 B. T. A. 737, we said:

This transaction was a patent evasion. It can not be too much emphasized that alleged sales of property for the purpose of establishing losses must be real, valid transactions, definitely placing the legal and equitable ownership of the property alleged to have been sold out of the hands and out of the control of the seller. In the case of corporations sales to stockholders in all cases are subject to special scrutiny and their good faith must be unquestioned. The principle of corporate entity can not be used to cloak a transaction which is essentially a fraud upon the public revenue.

There can be no question in this case but that the assets were actually and validly transferred by the corporation to two of its directors, but the actual transfer of assets is not sufficient to authorize a taxpayer to take a deduction with respect thereto. In order to take a deduction before assets have become worthless, and it is not claimed in this case that they were worthless in the taxable year, it must be shown that there was a sale or other disposition thereof. It is contended in this case that there was a sale for a valuable consideration. The burden of proof is upon the petitioner to show this. Even considering for the sake of argument that a corporation may sell its assets to its directors at a price much less than the market value and much less than what it could get from others for the same assets at the same time and realize a deductible loss on account thereof, we are faced with the question here as to whether the parties to the transaction contemplated the payment of a valuable con-

sideration for the assets transferred or whether a valuable consideration was paid which would warrant us in holding that there was in fact and substance a real sale of the assets, or if the transaction amounted to a mere gift or transfer without consideration to its directors and stockholders.

It is to be noted that the notes aggregating $6,000 given by those who received the assets were not to be paid, but were to be canceled and surrendered in the event there was an assessment of any size or character against the stock of the La Hacienda Company. Assessments had been made in the past against this stock and it might well have been assumed by all parties that such an assessment would be made in some amount after the transfer of the assets. The corporation owned 439.30 shares of the capital stock of that company of the par value of $100 per share. If the assessment had been $1 per share, it would have amounted to $439.30, and yet on account of that assessment the total of the $6,000 notes would be canceled, or, according to the terms of the agreement, even if a 10 cent assessment had been levied, amounting to $43.93 total, the entire amount of $6,000 represented by notes would not have to be paid. Just why the agreement provided that, if the assessment should be made upon the stock of the La Hacienda Company, the notes would not be payable, does not appear of record. The corporation owned a half interest in the lands known as the Black Mountain Oil Land, consisting of 40 acres, and owned other property which was included in the transfer. The record does not disclose the assets and liabilities of the Swan Oil Company and the Andy Fitz Mining & Milling Company. The only evidence as to the actual value of the assets transferred is the testimony of one of the individuals who received the assets to the effect that the directors did not consider them to be worth more than $6,000. Even if they were not worth any more than $6,000, we do not know how much of that value or what part of it was attributable to other assets than the La Hacienda Company stock. There is nothing to indicate that all of the assets would have been worthless if some assessment, however small, were made against that particular stock.

When we consider the relationship of the parties, the fact that they were all members of the Wishon family, except Watson, who was a son-in-law, and that all of them together owned all the stock of the petitioner, it may well be, so far as the record discloses, that the corporation intended to transfer the assets without any expectation of any consideration in money or money's worth being paid. Considering that the two notes for $3,000 were surrounded with the conditions of cancellation, and the past record of the La Hacienda Company, and the reasonable probability that an assessment would

be made against that stock in some amount, it might fairly be gathered from all the circumstances that the parties did not intend to pay any money whatever for the assets received from the petitioner and that the petitioner did not intend or expect to receive any. The notes were not negotiable with these uncertainties and conditions attached to them. They simply amounted to a promise to pay if and in the event that certain circumstances would not occur when it might reasonably have been anticipated at the time that they would occur.

Under the circumstances of this case we do not think that the petitioner has shown that an actual bona fide sale of its assets was made. The element of valuable consideration, which distinguishes a sale from a gift or other transfer without consideration, is not sufficiently shown. Accordingly, in our opinion the petitioner is not entitled to the deduction claimed as a loss resulting from a sale of assets in the taxable year.

*Judgment will be entered under Rule 50.*